UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND EASMON, JR., | No. 2:13-cv-1767 WBS CKD P |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| JEFFREY BEARD, | |
| Respondent. | |

Petitioner, a former state prisoner, is proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his 2011 sentence to three years in state prison following a no contest plea to one count of sexual penetration of a minor. (ECF No. 1 ("Ptn.").) Respondent has filed an answer to the petition. (ECF No. 12.) Upon careful consideration of the record and the applicable law, the undersigned will recommend that the petition be denied.

BACKGROUND

I. Facts

In its affirmation of the judgment on appeal, the California Court of Appeal, Third Appellate District, set forth the relevant factual background as follows:

> On May 9, 2010, the 16–year–old victim was sleeping in her room when defendant (the victim's stepfather) entered and turned on the light. The victim was wearing "cheer" shorts, a white t-shirt, a

1

> sweat shirt, and panties. She pretended to sleep while defendant removed her blankets.
>
> Defendant took pictures of the victim with his cell phone. The victim felt defendant rub her buttocks and thigh while she was lying on her stomach. Defendant then moved the victim's shorts and panties to one side and inserted his finger into her vagina for about 20 seconds. He took another picture of the victim before leaving the room. The victim texted a report of the incident to a friend as soon as defendant left.
>
> When questioned by authorities, defendant denied the incident and said that he considered the victim like a daughter. Defendant's cell phone contained six deleted photographs which were taken on the day of the incident.
>
> Defendant pleaded no contest to sexual penetration of a minor under the age of 18. (Pen. Code, § 289, subd. (h).) The trial court denied probation, sentenced defendant to three years in prison, and ordered him to register as a sex offender. (§§ 290, 290.006.

(Lod. Doc. 1 at 2-3.)[1]

II. Procedural History

On April 25, 2011, in the Yuba County Superior Court, petitioner pled no contest to sexual penetration of a minor under eighteen pursuant to Cal. Penal Code. § 289, subd. (h). (Ptn. at 1.) He was sentenced to a three-year prison term and is currently on parole. (Ptn. at 1; Lod Doc. 1 at 1, 3.)

Petitioner appealed his conviction, and after briefing by the parties (Lod. Doc. 2, 3), the California Court of Appeal affirmed the judgment on October 4, 2012. (Lod. Doc. 1.)

On August 2, 2012, petitioner filed a habeas petition in the Yuba County Superior Court. On October 2, 2012, the Superior Court denied the petition without prejudice as premature, as petitioner's appeal was pending. (Lod. Doc. 7.) On October 31, 2012, petitioner filed a motion for reconsideration of the Superior Court's denial. (Lod. Doc. 8.) On November 5, 2012, the Superior Court denied the petition on its merits. (Lod. Doc. 8.)

/////

/////

---

[1] Lodged Documents refer to documents lodged by respondent on January 9, 2014. (ECF No. 13.)

2

1  On November 15, 2012, petitioner filed a petition for review in the California Supreme
2  Court. (Lod. Doc. 5.) On December 19, 2012, the California Supreme Court denied review.
3  (Lod. Doc. 6.)

4  On December 31, 2012, petitioner filed a habeas petition in the California Court of
5  Appeal, which denied the petition on January 10, 2013. (Lod. Doc. 9.)

6  On January 28, 2013, petitioner filed a habeas petition in the California Supreme Court,
7  which denied the petition on March 30, 2012. (Lod. Doc. 10.)

8  Petitioner filed this federal habeas petition on August 26, 2013. (Ptn.) Respondent filed
9  an answer on December 23, 2013. (ECF No. 12.)

ANALYSIS

I. AEDPA

The statutory limitations of federal courts' power to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The text of § 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

As a preliminary matter, the Supreme Court has recently held and reconfirmed "that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" Harrington v. Richter, 131 S. Ct. 770, 785 (2011). Rather, "when a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Id. at 784-785, citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear

3

whether a decision appearing to rest on federal grounds was decided on another basis). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 785.

The Supreme Court has set forth the operative standard for federal habeas review of state court decisions under AEDPA as follows: "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Harrington, supra, 131 S. Ct. at 785, citing Williams v. Taylor, 529 U.S. 362, 410 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 786, citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). Accordingly, "a habeas court must determine what arguments or theories supported or ... could have supported[] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. "Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.'" Id. Emphasizing the stringency of this standard, which "stops short of imposing a complete bar of federal court relitigation of claims already rejected in state court proceedings[,]" the Supreme Court has cautioned that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id., citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

The undersigned also finds that the same deference is paid to the factual determinations of state courts. Under § 2254(d)(2), factual findings of the state courts are presumed to be correct subject only to a review of the record which demonstrates that the factual finding(s) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." It makes no sense to interpret "unreasonable" in § 2254(d)(2) in a manner different from that same word as it appears in § 2254(d)(1) – i.e., the factual error must be so apparent that "fairminded jurists" examining the same record could not abide by the state court factual determination. A petitioner must show clearly and convincingly

4

that the factual determination is unreasonable. See Rice v. Collins, 546 U.S. 333, 338 (2006).

The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19 (2002). Specifically, the petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, supra, 131 S. Ct. at 786-787. Clearly established" law is law that has been "squarely addressed" by the United States Supreme Court. Wright v. Van Patten, 552 U.S. 120, 125 (2008). Thus, extrapolations of settled law to unique situations will not qualify as clearly established. See e.g., Carey v. Musladin, 549 U.S. 70, 76 (2006) (established law not permitting state sponsored practices to inject bias into a criminal proceeding by compelling a defendant to wear prison clothing or by unnecessary showing of uniformed guards does not qualify as clearly established law when spectators' conduct is the alleged cause of bias injection). The established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. 3, 9 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early, supra, 537 U.S. at 8. Where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

"When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits – but that presumption can in some limited circumstances be rebutted." Johnson v. Williams, 133 S. Ct. 1088, 1096 (2013). "When the evidence leads very clearly to the conclusion that a federal claim

/////

was inadvertently overlooked in state court, § 2254(d) entitles the prisoner to" de novo review of the claim. Id. at 1097.

II. Petitioner's Claims

A. Adverse Inference from Silence

Petitioner claims that the sentencing court violated his Fifth Amendment right to remain silent and deprived him of due process of law by "using my silence against me for sentencing purposes." (Ptn. at 5.) Specifically, petitioner asserts:

> On the advice of my counsel, I declined to discuss the facts of the case with the probation officer. The sentencing court used my silence as a major factor in imposing a prison sentence instead of probation and in imposing a discretionary sex offender registration requirement. . . . The constitutional privilege against self-incrimination applies at a sentencing hearing. A sentencing court must not draw an adverse inference from a criminal defendant invoking the right to remain silent at a sentencing hearing. [Citation.]

(Ptn. at 5.)

In its judgment on appeal, the Court of Appeal made the following factual findings relevant to petitioner's claim:

> During a hearing on April 25, 2011, the trial court explained to defendant its understanding of the plea offer. The trial court said that the offer was for defendant was to plead to count 2, a felony violation of section 289, subdivision (h), sexual penetration of a minor under the age of 18, which carried a possible prison sentence of 16 months, 2 years or 3 years. The trial court added that a favorable psychological report . . . was a requirement for a grant of probation. The trial court confirmed that defendant did not have any 'probation limiters' and concluded: 'So you could be placed on probation for up to five years and serve up to 365 days in the county jail, or you could serve up to three years in state prison. It would depend upon the sentencing.' Defendant told the trial court that he understood the plea offer and wished to accept it. Defendant then entered his no contest plea.
>
> . . .
>
> The probation report initially recommended probation for three years. But the probation department subsequently informed the trial court that . . . [b]ecause a psychological report had not been completed, the probation department could not make a probation recommendation. The probation department recommended that the trial court continue the sentencing hearing to permit the preparation of a psychological report.

6

> The People filed a sentencing statement addendum opposing the probation department's recommendation. The addendum said the People believed probation was not appropriate in this case, and that if the trial court was not inclined to grant probation, a continuance for preparation of a psychological report was not required.
>
> At the sentencing hearing, the trial court stated its tentative decision before allowing counsel to argue. The trial court articulated the probation criteria set forth in Rule 4.414 of the California Rule of Court (Rule 4.414) in connection with the facts of the case, saying that the vulnerability of the victim was the criteria that far outweighs all others. The trial court noted evidence that the victim suffered emotional injury and the likelihood that defendant would be a danger to other minors. Having considered the Rule 4.414 criteria, the trial court tentatively concluded that defendant was not amenable to a grant of probation, that the need for a section 288.1 psychological report was thus moot, and that the trial court intended to deny probation.
>
> Defense counsel argued that the defendant should be granted probation, but did not argue that the trial court's tentative ruling would violate the plea agreement.
>
> The trial court rejected the defense arguments, articulated the Rule 4.414 criteria again, denied probation, sentenced defendant to three years in prison, and ordered him to register as a sex offender.

(Lod. Doc. 1 at 3- 6.) The facts as set forth by the state court of appeal are presumed correct absent proof of error by clear and convincing evidence, 28 U.S.C. § 2254(e)(1), and this summary is consistent with the record as reviewed by the undersigned. (Reporter's Transcript on Appeal (RT) 2-33.)

In denying petitioner's claim that trial court improperly considered his silence when denying probation, the court of appeal reasoned:

> In addition, defendant claims that the trial court unfairly penalized him for not discussing the offense with the probation officer, an exercise of his Fifth Amendment right against self-incrimination. However, the trial court could properly infer a lack of remorse from defendant's refusal to talk about the offense. Whether a defendant is remorseful is a proper consideration with respect to probation. (Rule 4.414(b)(7).) Lack of remorse may be used as an aggravating factor 'unless the defendant has denied guilt and the evidence of guilt is conflicting. [Citation.]' (People v. Leung (1992) 5 Cal. App. 4th 482, 507 (italics omitted).) Because defendant's no contest plea is an admission of guilt (§ 1016, subd. 3), the trial court could infer a lack of remorse from defendant's refusal to discuss the crime.

(Lod. Doc. 1 at 10-11.)

Generally, a federal court may not review a state sentence that is within statutory limits. Walker v. Endell, 850 F.2d 470, 476 (9th Cir. 1987). Here, there is no dispute that the sentence petitioner received was within state statutory limits, and that the factors cited by the trial court in imposing a prison term instead of probation were authorized under California Court Rule 4.414. Furthermore, the court of appeal's finding that the sentence was proper under state law is binding on this court on federal habeas review. See Hicks on Behalf of Feiock v. Feoick, 485 U.S. 624, 630, n.3 (1988). A federal court may vacate a sentence, however, if it was imposed in violation of due process. Walker, 850 F.2d at 476.

In Mitchell v. U.S., 526 U.S. 314, 316 (1999), the Supreme Court held that a guilty plea does not waive Fifth Amendment privilege against self-incrimination at sentencing. Moreover, "in determining *facts about the crime* which bear upon the severity of the sentence," a sentencing court may not draw an adverse inference from a defendant's silence. Id. (emphasis added). Mitchell pled guilty to four counts of drug trafficking, but reserved the right to contest the amount of drugs attributable to her under one count. The drug quantity was to be determined at sentencing. Id. at 317. At the sentencing hearing, Mitchell did not testify about drug quantity, but relied on existing evidence. The court took her silence as acquiescence to her codefendants' testimony about the amount of drugs sold, and sentenced her to ten years in prison based on that amount. Id. at 318-319. The Supreme Court ruled that this violated the privilege against self-incrimination, as "[t]he concerns which mandate the rule against negative inferences at a criminal trial apply with equal force at sentencing." Id. at 329.

However, the Mitchell court continued that "[w]hether silence bears upon the determination of lack of remorse, or upon acceptance of responsibility for purposes of the downward adjustment provided in [ ] the United States Sentencing Guidelines [], is a separate question. It is not before us, and we express no view on it." Id. at 330.

Recently, the Supreme Court characterized the rule announced in Mitchell as a "narrow holding . . . limited to inferences pertaining to the facts of the crime." White v. Woodall, 134 S. Ct. 1697, 1703 (2014), citing Mitchell, 526 U.S. at 328. The Supreme Court noted that, post-Mitchell, the circuit courts were in "fairminded disagreement" about whether a sentencing court

may infer a lack of remorse from a defendant's silence. Id. at 1704, n.3. The Supreme Court concluded that, in a sentencing decision based on a guilty plea, "any inference that could have been drawn from respondent's silence would arguably fall within the class of inferences as to which Mitchell leaves the door open." Id. at 1704. Thus, a state court's determination that such an inference is permissible is not "objectively unreasonable" under AEDPA. Id.

Accordingly, petitioner is not entitled to federal habeas relief on this claim.

B. Ineffective Assistance of Counsel

Petitioner next claims that his attorney, Keith Staten, rendered ineffective assistance in violation of the Sixth Amendment. He claims that Staten was ineffective in (1) failing to submit petitioner's written statement to the court at the sentencing hearing; (2) failing to explain to the court that petitioner "was merely following his advice" when he declined to discuss the case with the probation officer preparing the pre-sentence report; (3) failing to suggest an independent psychological evaluation of petitioner; and (4) failing to object to the court's discretionary decision requiring petitioner to register as a sex offender.  (Lod. Doc. 7 at 3.)

Petitioner submits a declaration stating, in relevant part:

> 1. [After I entered a no-contest plea to one count of sexual penetration of a minor on April 25, 2011], Mr. Staten advised me not to discuss the offense with the probation officer during the probation interview.
>
> 2. I followed Mr. Staten's advice and declined to discuss the offense with the probation officer.
>
> 3. Mr. Staten also advised me to tell the probation officer that I would submit a written statement before sentencing [and] told me he would help me prepare one.
>
> 4. I later gave Mr. Staten a draft of a written statement and he advised me he would suggest any necessary changes to it.
>
> 5. Mr. Staten did not do so, but instead told me just a few days before sentencing that a written statement was likely unnecessary at that time because the judge probably would postpone proceedings in order to obtain a psychological evaluation.
>
> 6. Mr. Staten never discussed the possibility of requesting funds from the court for . . . a psychologist to conduct a psychological evaluation before sentencing or the possibility of obtaining such an evaluation at my or my family's own expense.

9

> 7. Mr. Staten did not explain to the sentencing court that he had advised me not to discuss the case with the probation officer. The sentencing court, in its own words, placed great weight on my failure to discuss the case with the probation officer when, on June 6, 2011, it sentenced me to the upper term of 3 years in prison and ordered me as a matter of its discretion to register as a sex offender.

(Ptn. at 17.)

Petitioner also submits a declaration by Mr. Staten, stating in relevant part:

> 1. I advised Mr. Easmon to tell the probation officer during the probation interview that he would not discuss any of the facts related to the offense but that he would submit a written statement before sentencing.
>
> 2. At the sentencing hearing, I thought I adequately explained to the court that Mr. Easmon was simply following my advice when he declined to discuss any of the facts relating to the case with the probation officer.
>
> 3. I did not consider obtaining a psychological evaluation of Mr. Easmon prior to sentencing because I thought the Static 99R risk assessment tool was adequate.
>
> 4. Mr. Easmon gave me a draft of a written statement so that I could make any necessary changes to it, but I did not do so. I thought it was unnecessary at the time because the judge likely would postpone the sentencing hearing in order to obtain a psychological evaluation as recommended by the probation department.
>
> 5. I was unaware that there is an arguably meritorious argument that a jury trial and proof beyond a reasonable doubt is necessary for the imposition of a discretionary sex offender registration requirement.
>
> 6. I believe I made all appropriate objections to any arguable error prior to or at the sentencing proceedings. I had no strategic or tactical reason not to make such objections.

(Ptn. at 18-19.)

The last reasoned decision on this claim was issued by Yuba County Superior Court, ruling on petitioner's motion for reconsideration on his petition for writ of habeas corpus. (See Lod. Doc. 7.) The superior court wrote:

> The petition is denied. Petitioner has failed to demonstrate that but for counsel's alleged ineffectiveness, the sentence would have been more favorable. Strickland v. Washington (1984) 466 U.S. 633, 687.

(Lod. Doc. 8.)

The Supreme Court has enunciated the standards for judging ineffective assistance of counsel claims. See Strickland v. Washington, 466 U.S. 668 (1984). First, a defendant must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Strickland, 466 U.S. at 688. To this end, the defendant must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. Id. at 690. The court must then determine, whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. Id. Second, a defendant must affirmatively prove prejudice. Id. at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. See also United States v. Murray, 751 F.2d 1528, 1535 (9th Cir. 1985); United States v. Schaflander, 743 F.2d 714, 717-718 (9th Cir. 1984) (per curiam).

As to ineffective assistance claims in the federal habeas context, the Supreme Court has instructed:

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," id., at 689; Lindh v. Murphy, 521 U.S. 320, 333, n. 7, (1997), and when the two apply in tandem, review is "doubly" so, Knowles, 556 U.S., at ----, 129 S. Ct. at 1420. The Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S. Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington v. Richter, 131 S. Ct. 770, 787-788 (U.S. 2011) (parallel citations omitted).

Here, as a result of his attorney's conduct, petitioner did not have an opportunity to discuss the offense or issues relating to rehabilitation with either the probation officer or the sentencing court. He declined to discuss the offense with the probation officer on the advice of counsel, with the understanding that he would submit a written statement to the court. He submitted a draft statement to Mr. Staten, but Mr. Staten did not help him revise it or submit it.

11

1  Rather, he told petitioner that it was unnecessary because the court would order a psychological
2  evaluation before sentencing. This prediction was incorrect: The court sentenced petitioner
3  without the benefit of a psychological exam or a written statement.
4      At the sentencing hearing, Mr. Staten explained that petitioner declined to discuss the
5  crime with the probation officer on counsel's advice, as he preferred "to give a statement to the
6  Court themselves." (RT 21.) However, in the absence of a written statement or other indication
7  that petitioner was remorseful, the trial court several times cited petitioner's apparent
8  unwillingness to discuss the crime. (RT 22-23 ("I do not determine that the Defendant has
9  expressed remorse"); RT 24-25 ("[T]he Court places great stock in his failure to admit that he has
10 any type of problem. He refused to talk about the circumstances of the crime with the probation
11 officer."); RT 25 ("It is not likely that he would benefit from counseling because he will not talk
12 about the offense."); RT 30 ("Defendant has shown extreme reticence in admitting what he
13 did.").)
14     In ruling on petitioner's ineffective assistance claim, the state courts determined that –
15 regardless of whether Mr. Staten was constitutionally ineffective – petitioner was not prejudiced
16 by Mr. Staten's actions. Under AEDPA, the question for this court is whether a "fairminded
17 jurist" could arrive at that conclusion based on the state court record.  See Rice, 546 U.S. at 338.
18     While the sentencing court lacked a written statement from petitioner, it reviewed the
19 defense's sentencing memorandum, which stated that petitioner had no criminal record and would
20 "successfully comply" with probation. The court also considered letters from petitioner's friends
21 and family, most of whom maintained that petitioner was innocent of the charge to which he pled.
22 (RT 14; Clerk's Transcript (CT) 87-95.)
23     In determining whether to grant probation, the court explained that, under Rule 4.414, "the
24 criteria that far outweighs all others is 414(a)(3), the vulnerability of the victim," who was a
25 sixteen-year old girl sleeping in her own bed at the time of the assault. (RT 15.) The court also
26 placed "great weight" on the following factors: "414(a)(4), that the victim suffered emotional
27 injury; [and] 414(b)(8), that the likelihood if not imprisoned Defendant would be a danger to
28 other minors." (RT 22.) As to the family letters, the court stated:

> I do not determine that Defendant has expressed remorse, and that as a matter of fact, according to the various letters that have been presented by him in support of a grant of probation, apparently he has not been candid with the individuals closest to him, his family members who have submitted letters in support.

(RT 23.) Thus the court drew its inference that petitioner lacked remorse not only from petitioner's silence in court proceedings, but also from his failure to admit the crime to his own family. (See also RT 30.) The court further determined that rehabilitation was not feasible. (RT 25.) Based on these criteria, the court denied probation, mooting the need for a psychological report. (RT 17, 25.)

In deciding to impose the upper term, the sentencing court found that petitioner took advantage of a position of trust as the victim's stepfather, that the manner in which the offense was carried out indicated planning, and that the victim sustained emotional injuries. (RT 26.)

In sum, while the court cited petitioner's refusal to discuss the crime as a significant fact in sentencing, several other factors bore on the decision to deny probation and impose the upper term, none of which related to Mr. Staten's advice and/or his failure to submit petitioner's statement to the court. Thus, the undersigned concludes that the state courts' finding that these actions did not prejudice petitioner was objectively reasonable under AEDPA.

Petitioner has also failed to show prejudice from Mr. Staten's failure to obtain an independent psychological report. The probation report noted petitioner's score on the STATIC-99R, "an actuarial measure of risk for sexual offense recidivism." (CT 129.) Petitioner received "a total score of 0, which places him in the Low Risk Category for being charged or convicted of another sexual offense." (Id.) Once the court determined that petitioner was not amenable to probation based on the factors described above, the need for another evaluation was moot. (RT 23.)

Finally, petitioner has not shown prejudice in connection with having to register as a sex offender. Under Cal. Penal Code § 290.006, a trial court may impose the registration requirement "if the court finds at the time of conviction or sentencing that the person committed the offense as a result of sexual compulsion or for purposes of sexual gratification." (See RT 29.) Here, the probation report recommended that petitioner be required to register as a sex offender. (CT 132-

13

133.) At sentencing, Mr. Staten argued against registration, "especially if [petitioner] attends counseling and can show that the registration would be unnecessary." (RT 28.) However, the court found that petitioner's offense met the § 290.006 criteria. (RT 29.)

Petitioner complains that Mr. Staten failed to object that the court's registration analysis was based on facts not proven beyond a reasonable doubt. (Lod. Doc. 7 at 3.) Five months before petitioner's sentencing hearing, the California Supreme Court granted review of People v. Mosely, 116 Cal. Rptr. 3d 321, 343 (2010), superseded by People v. Mosely, 247 P.3d 515, 121 Cal. Rptr. 3d 280 (2011), which held "that discretionary sex offender registration entailing [a] residency restriction cannot be imposed on [a] defendant on the basis of facts not found beyond a reasonable doubt by a jury." In Mosely, "[a]lthough the jury found defendant not guilty of any sexual offense, the court ordered defendant to register as a sex offender" under Cal. Penal Code § 290.006. Id. at 325. The state supreme court's review of Mosely is pending. 247 P.3d 515. Thus at the time of petitioner's hearing, it was an open question under state law whether a defendant had a right to jury trial on facts underlying discretionary sex offender registration. Moreover, petitioner's guilty plea made the facts of his sentencing distinguishable from Mosely. Petitioner has not shown prejudice based on his attorney's failure to object on this basis.

Because the state courts reasonably determined that Mr. Staten's conduct did not prejudice petitioner, he is not entitled to habeas relief on this claim.

Accordingly, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus (ECF No. 1) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the

14


event he files an appeal of the judgment in this case. <u>See</u> Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

Dated: October 10, 2014

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2 / easm1767.hc